UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SEVEN SEAS TECHNOLOGIES, INC.                                          PLAINTIFF

V.                                              CIVIL ACTION NO. 3:18-CV-137-DPJ-FKB

INFINITE COMPUTER SOLUTIONS, INC.                                      DEFENDANT

ORDER

Defendant Infinite Computer Solutions, Inc. ("Infinite"), asks the Court to dismiss Plaintiff Seven Seas Technologies, Inc.'s ("Seven Seas") Complaint against it. Mot. to Dismiss [9]. For the reasons that follow, Infinite's motion is granted in part but otherwise denied.

I.   Facts and Procedural History

This case centers on the contractual relationship between Plaintiff Seven Seas and Conduent Incorporated ("Conduent"), a non-party to this suit. Conduent provides "broad and comprehensive services in support of the administration of Mississippi Medicaid funds paid to Mississippi healthcare providers and entities who serve the residents and citizens covered by the Mississippi Medicaid Program." Compl. [1] ¶ 10. Under their contract, Seven Seas "performed contract IT services . . . to support . . . Conduent's services to Mississippi residents and providers pursuant to . . . Conduent's contract with the Mississippi [Division of Medicaid.]" *Id.* ¶¶ 10–11.

Defendant Infinite also "maintained a contract relationship with Conduent to support Conduent's contract services in various locations . . . , and Infinite at some time became interested in the work [Seven Seas] was performing on behalf of the Mississippi Medicaid program through the Conduent contract." *Id.* ¶ 13. Seven Seas alleges that, beginning in the spring of 2017, "Infinite began to implement a strategy and execute plans aimed at disruption and destruction of the [Seven Seas/]Conduent business and contractual relationship." *Id.* ¶ 15.

In particular, Infinite "undertook repeated, consistent, orchestrated attempts to hire away . . . employees from [Seven Seas]," even though the Seven Seas employees had signed non-compete and non-disclosure agreements. *Id.* ¶ 16. Seven Seas claims Infinite "targeted [its] employees . . . who had proprietary knowledge as to[] the Mississippi Medicaid Management Information System." *Id.* ¶¶ 17–18.

According to Seven Seas, Infinite informed the employees it targeted that the Seven Seas contract with Conduent "was terminating at a time when, in fact, it was not." *Id.* ¶ 29. As a result of Infinite's efforts, some Seven Seas "employees working on Mississippi Medicaid projects have departed," and whereas Conduent previously renewed its contract with Seven Seas on an annual basis, "toward the end of 2017," those "contract renewals began to occur only on a month-to-month basis." *Id.* ¶¶ 29, 25. Conduent ultimately terminated its contract with Seven Seas effective March 19, 2018.

Seven Seas filed this lawsuit against Infinite on March 2, 2018. It asserts state-law claims for intentional interference with a business relationship, intentional interference with a contractual relationship, misappropriation of trade secrets, unfair competition, unjust enrichment, negligence, and willful misconduct. Infinite moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court has both personal and subject-matter jurisdiction.

II.     Standard

When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare

2

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Throughout its memoranda, Infinite attempts to hold Seven Seas to a higher standard than Rule 12(b)(6) requires. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted). Yet Infinite frequently faults Seven Seas for failing to connect every dot or aver direct evidence of every essential element. For example, Infinite argues that Seven Seas has not stated a case for interference with a contract because it did not allege that Infinite discussed Seven Seas' contract with Conduent. *See* Def.'s Reply [16] at 6. Similarly, Infinite says Seven Seas—which lost a decade-old contract—failed to show Infinite caused any damages. *Id.* at 4.

Despite such arguments, Seven Seas is not required to plead a complete case on the first day of litigation and will never be required to establish each element with direct evidence—circumstantial evidence will suffice. At this stage, Seven Seas is required merely to plead a claim that is facially plausible. *Iqbal*, 556 U.S. at 678. And that "standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

Finally, in considering a motion under Rule 12(b)(6), the Court "must [generally] limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "If . . . matters outside the pleadings are

3

presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). In this case, Seven Seas submitted a declaration that expands upon its factual allegations in response to Infinite's motion. The Court cannot consider the declaration without converting Infinite's motion into a motion for summary judgment, and the Court declines to do so. *See Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988) (explaining that Rule 12(d) "gives a district court complete discretion to determine whether . . . to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion") (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1366 (1969)).

III.    Analysis

    A.    Count I:  Intentional Interference with a Business Relationship

"[T]ortious interference with business relations occurs when a person unlawfully diverts prospective customers away from one's business . . . ." *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998). To establish a claim for tortious interference with a business relationship, the plaintiff must show:

(1) The acts were intentional and willful;

(2) The acts were calculated to cause damage to the plaintiff[] in [its] lawful business;

(3) The acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); [and]

(4) Actual damage and loss resulted.

*MBF Corp. v. Century Commc'ns, Inc.*, 663 So. 2d 595, 598 (Miss. 1995) (quoting *Nichols v. Tri-State Brick & Tile*, 608 So. 2d 324, 328 (Miss. 1992)). To make a "prima facie case of

4

damages, 'the plaintiff must show (1) a loss, and (2) that [the] defendant's conduct caused the loss.'" *MBF Corp.*, 663 So. 2d at 598 (quoting *Cenac v. Murry*, 609 So. 2d 1257, 1271 (Miss. 1992)).

Infinite says Seven Seas fails to state an intentional-interference-with-a-business-relationship claim for three reasons: (1) "the Complaint does not plausibly allege that Infinite's supposed recruiting efforts were calculated to damage [Seven Seas'] business," (2) "the Complaint does not allege that Infinite's conduct was unjustified," and (3) "the Complaint does not make it plausible that [Seven Seas] experienced actual damage or loss based on any action of Infinite." Def.'s Mem. [10] at 5–6.

Starting with intent, Seven Seas notes that under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a [party's] mind may be alleged generally." Fed. R. Civ. P. 9(b). And as noted in the standards section of this Order, Seven Seas need not plead direct evidence supporting every essential element. Indeed the intent component of a tortious-interference claim "may be inferred." *AmSouth Bank v. Gupta*, 838 So. 2d 205, 214 (Miss. 2002).

Infinite does not address these arguments in its reply, and the Court concludes that the factual averments are sufficient to infer intent. For example, Seven Seas pleads specific instances in which Infinite allegedly recruited Seven Seas employees, telling them that Infinite "would be taking over the Mississippi projects within the next couple or few months." Compl. [1] ¶ 22(c). Such averments plausibly suggest an intent to damage Seven Seas' business.

Turning to causation, Infinite says Seven Seas has pleaded no facts to support its contention that the loss of employees Infinite allegedly caused "impaired its ability to perform its contract with Conduent." Def.'s Mem. [10] at 7. Yet Seven Seas did just that. Seven Seas alleged that Conduent had always been satisfied with its work, but Infinite caused Seven Seas

5

employees to depart and that this "materially affected [Seven Seas'] ability to perform the contract," leading to Conduent's decision not to renew. Compl. [1] ¶¶ 12, 27. Seven Seas also pleaded temporal proximity. Conduent had renewed the Seven Seas contract each year for about ten years. *See* Compl. [1] ¶¶ 25. That changed to a month-to-month renewal in 2017 during the time Infinite was allegedly interfering with Seven Seas' business. *Id.* ¶¶ 26–27. Seven Seas then lost the contract. These allegations "raise a reasonable expectation that discovery will reveal evidence of" a causal connection between Infinite's alleged actions and Conduent's termination of the contract. *Twombly*, 550 U.S. at 556.

Finally, as to whether Infinite's conduct was unjustified, Infinite argues that its "alleged conduct was [no]thing more than fair, competitive recruiting." Def.'s Mem. [10] at 5. But the Complaint contains allegations that Infinite engaged in "overt efforts to induce [Seven Seas] employees to breach their non-compete agreements and disclose confidential and proprietary information." Compl. [1] ¶ 22. More specifically, Seven Seas avers Infinite's efforts included:

> (1) contacting a Seven Seas employee about an available opportunity with Infinite for a "COBOI Developer experienced in Medicaid applications . . . at a time when [Seven Seas] was performing its Mississippi contract obligations through this employee,"
>
> (2) telling seven Seven Seas employees that Seven Seas' "Mississippi contract with Conduent would not be renewed and would last only a few more weeks (a fact that either was not true, was not known to or communicated to [Seven Seas], and/or should not have been known to Infinite)" and offering those employees jobs, "after which all o[r] some of the [Seven Seas] employees mentioned the non-compete agreements and were told that this was not a problem,"
>
> (3) in October 2017, informing a Seven Seas employee "that an opportunity for employment existed with Infinite because it would be taking over the Mississippi projects within the next couple or few months" and further telling that employee "that complete legal support would be provided should the . . . employee make the transition *and breach* the non-compete and/or non-disclosure agreement existing with" Seven Seas,

> (4) recruiting one Seven Seas employee for "a Programmer Analyst position [that] was available in Ridgeland, MS because Infinite was transitioning into that project,"
>
> (5) informing a Seven Seas employee "that Infinite was actively pursuing the Mississippi project which they anticipated taking over" and assuring that employee "that any legal issues [with the non-compete and non-disclosure agreements] would be handled by Infinite's legal team," and
>
> (6) in October 2017, calling a Seven Seas employee three times and leaving a voice message "stating that Infinite was transitioning to take over the Mississippi project and asking if the employee would have interest in a Programmer Analyst position to assist Conduent in Ridgeland, Mississippi."

*Id.* (emphasis added).

Thus, Seven Seas has pleaded something other than what Infinite describes as fair competition. Instead, it says Infinite poached Seven Seas employees by misleading them and offering "complete legal support" should they "make the transition *and breach*" the non-compete and/or non-disclosure agreements. Compl. [1] ¶ 22(c) (emphasis added). Seven Seas likewise avers that Infinite did so because it lacked knowledge of the "unique and specific claims processing capabilities" that Seven Seas developed for the Conduent contract, *id.* ¶ 23, and that Infinite "enhance[ed] its own capabilities while simultaneously undermining [Seven Seas'] capabilities," *id.* ¶ 24. Infinite has not made a sufficient legal argument that these activities—if true—would be considered nothing more than "fair competitive recruiting." Def.'s Mem. [10] at 5.

Infinite also argues that Seven Seas failed to plead that it actually lost employees to Infinite, Def.'s Mem. [10] at 5, and even if it did, Seven Seas has not attached their employment contracts or shown that the former employees breached them, Def.'s Reply [16] at 3. To begin, Seven Seas adequately pleaded that it lost employees to Infinite. *See* Compl. [1] ¶¶ 24, 30. And as for the alleged breach, that argument would go to the merits, not plausibility. The facts

7

alleged state a plausible claim that Infinite coaxed the employees to leave, offering legal aid even if they breached their contracts.

Infinite makes other arguments as to Count I, but they fail to fully account for what Seven Seas pleaded and demand more than Rule 8 requires. Viewed in the light most favorable to Seven Seas, it has pleaded a plausible claim for tortious interference with a business relationship.[1]

B.   Count II: Tortious Interference with Contract

In addition to establishing the four elements of a tortious-interference-with-a-business-relationship claim, the plaintiff in a tortious-interference-with-contract claim "must prove that an enforceable obligation existed between the plaintiff and another party" and "that the contract would have been performed but for the alleged interference." *Par Indus., Inc.*, 708 So. 2d at 48. Because the first four elements are the same as Count I, the Court's ruling on those elements applies to this claim as well.

As to the fifth element, Infinite makes what seems like a simple argument—you cannot state a claim for tortious interference with a contract without a breach of contract. *See* Def.'s Mem. [10] at 7. It then asserts that "Plaintiff cites no authority supporting a claim for interference with contract when the contract was not breached, but instead simply expired on its own terms and was not renewed." Def.'s Reply [16] at 6.

Not so. In its response, Seven Seas cites three Mississippi cases suggesting that this tort can exist when there is no actual breach of contract. *See* Pl.'s Mem. [14] at 14–15. For example,

---

[1] Had the Court granted Infinite's motion as to this claim, it would have allowed Seven Seas to seek leave to amend. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) ("[A] plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to re-filing.") (citation omitted).

Seven Seas cites *Black v. Ansah*, where then state-court Judge Leslie Southwick examined the accrual date for a tortious-interference-with-contract claim premised on non-renewal. 876 So. 2d 395 (Miss. Ct. App. 2003) (Southwick, J.). While the case does not directly address the issue, the court did not say the claim was lacking simply because it dealt with an induced non-renewal as opposed to a breach.

Seven Seas also cites *Levens v. Campbell*, where the Mississippi Supreme Court described tortious interference with contractual relations as follows:

> One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

733 So. 2d 753, 760 (Miss. 1999) (citation omitted) (holding that a party can tortiously interfere with at-will employment); *see also S. Health Corp. of Hous. v. Crausby*, 174 So. 3d 916, 919 (Miss. Ct. App. 2015) (same). Seven Seas has pleaded specific facts stating a plausible claim that Infinite impaired Seven Seas' ability to perform the contract. *See, e.g.*, Compl. [1] ¶¶ 22–31.

The Court is not yet willing to say whether the alleged facts can ultimately establish this claim. But Infinite never addressed Seven Seas' legal authority and cited no cases—in either brief—to support its position that impaired performance and non-renewal are insufficient. Accordingly, those arguments are rejected without prejudice.

The only other argument Infinite makes that was not raised with respect to Count I—and otherwise merits discussion—is that Seven Seas "neither attached the alleged Conduent contract to the Complaint nor elaborated on its terms." Def.'s Mem. [10] at 8. Infinite is correct that Seven Seas has neither submitted nor detailed the terms of its contract with Conduent. But it does allege the existence of a contract between itself and Conduent and shows how Infinite allegedly interfered with it. The Court finds no binding authority suggesting that Seven Seas'

9

allegations are insufficient at the pleading stage. *See id.* at 8 (citing a district court case from New York); *cf. Smith v. Antler Insanity, LLC*, 58 F. Supp. 3d 716, 723 (S.D. Miss. 2014) (finding plaintiff sufficiently alleged existence of valid contract for purposes of breach-of-contract claim where he "pled the existence of a valid contract").

For these reasons, the Court denies Infinite's motion to dismiss Count II without prejudice to its right to reassert the legal arguments under Rule 56.

C. Count III: Misappropriation of Trade Secrets

The Mississippi Uniform Trade Secrets Act ("MUTSA") "creates a cause of action for the misappropriation of another's trade secrets when those secrets are accessed by improper means." *Wachovia Bank N.A. v. Charter Bank*, No. 1:08-CV-267-HSO-JMR, 2010 WL 3812355, at *3 (S.D. Miss. Sept. 22, 2010). "To state a viable claim under [the] MUTSA, [a plaintiff] must demonstrate: (1) a trade secret existed; (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (3) the use of the trade secret was without the plaintiff's authorization." *Unified Brands, Inc. v. Teders*, 868 F. Supp. 2d 572, 583 (S.D. Miss. 2012). The statute defines "trade secret" as

> information, including a formula, pattern, compilation, program, device, method, technique or process, that:
>
> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Miss. Code Ann. § 75-26-3(d). It defines "improper means" as including "theft, bribery, misrepresentation, breach *or inducement of a breach* of a duty to maintain secrecy, or espionage through electronic or other means." *Id.* § 75-26-3(a) (emphasis added). Beyond the statutory

10

definitions, the MUTSA is "an area [of the law] with sparse precedent." *Marshall v. Gipson Steel, Inc.*, 806 So. 2d 266, 271 (Miss. 2002).

Infinite says Seven Seas' Complaint fails to allege the existence of a trade secret or that Infinite acquired or used any trade secret. Starting with the existence of a "specific" trade secret, a party is not required to plead the very secrets it is suing to protect. Here, Seven Seas alleges that it has developed "unique and specific claims processing capabilities specific to the Mississippi Medicaid Management Information System." Compl. [1] ¶ 23. At this stage, the Court finds these allegations sufficient to plausibly state the existence of a trade secret under the MUTSA. *See Precisions Spine, Inc. v. Zavation, LLC*, No. 3:15-CV-681-LG-RHW, 2016 WL 866965, at *4 (S.D. Miss. Mar. 2, 2016) (finding allegation that information "concerning the design and manufacture of [the plaintiff's] products" constituted trade secret sufficient to state a claim).

The closer question is whether Seven Seas adequately pleaded that Infinite induced anyone to disclose a trade secret. In its Complaint, Seven Seas avers that (1) its employees had knowledge of its secrets, Compl. [1] ¶ 19; (2) Infinite desired that knowledge and needed it to perform the Mississippi Medicaid contract it hoped to take from Seven Seas, *id.*; *see also id.* ¶ 22; (3) it therefore induced Seven Seas' employees to leave, *id.* ¶¶ 22, 30, by informing them that even if they breached the non-disclosure agreements Infinite would take care of it, *id.* ¶ 22(b), (c), (e), and (g); and (5) Infinite "attempted to convert this proprietary information and know-how to its own use and business advantage[, b]y enhancing its own capabilities . . . [thereby] increas[ing] its business with Conduent for Mississippi Medicaid services," *id.* ¶ 24.

The line between conclusory assertions and factual content is sometimes hard to define. In this case, the averments regarding Infinite's alleged use of the information sounds conclusory.

11

But only Infinite and its employees know whether any secrets were divulged. The Complaint therefore paints a circumstantial case, observing Infinite's efforts to acquire employees with knowledge of the Mississippi Medicaid services and the resulting work Infinite acquired from Conduent to perform those services. While there is no direct evidence at this point, the averments must be viewed in the light most favorable to Seven Seas, and in that light they "raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (citation and quotation marks omitted).[2]

Finally, as in other sections of its briefs, Infinite argues that Seven Seas has not pleaded various facts. For example, it says Seven Seas "failed to support the economic value of the purported secret(s)"; whether they were "readily ascertainable by proper means"; and whether they were "subject to reasonable efforts to maintain secrecy." Def.'s Mem. [10] at 9. But Seven Seas did allege *facts* suggesting that the information was subject to non-disclosure agreements and that Infinite must have placed some value on the information given its efforts to obtain it. Again, the case is at the Rule 12(b)(6) stage. Perhaps the arguments will have more teeth later, but they are denied for now.

D. Count IV: Unfair Competition

"Mississippi provides a cause of action for unfair competition 'against one who sets about to maliciously and wantonly injure a competitor' [where] injury results." *Precision Spine, Inc.*, 2016 WL 866965, at *6 (quoting *Cenac*, 609 So. 2d at 1269). Infinite says Seven Seas'

---

[2] The Court anticipates that discovery will quickly reveal what—if anything—Infinite learned from former Seven Seas employees. Were the Court to grant this motion, it would likely allow Seven Seas to amend the Complaint and reassert Count III if discovery supported it. As the procedural posture now stands, Infinite can move for summary judgment if the evidence is lacking. Regardless, the claim is facially plausible.

12

unfair-competition claim fails because its alleged conduct was nothing more than legitimate competition and Seven Seas' allegations fail to causally link its injury to Infinite's conduct. The Court addressed and rejected these same arguments with regard to the tortious-interference-with-business-relations claim, and for the same reasons, the Court finds Seven Seas has stated a plausible claim for unfair competition.

E. Count V: Unjust Enrichment

A claim for unjust enrichment exists "when one party has mistakenly paid another party." *Willis v. Rehab Sols. PLLC*, 82 So. 3d 583, 588 (Miss. 2012). It "applies in situations where no legal contract exists, and the person charged is in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain, causing him or her to remit what was received." *Id.* But "[t]here is nothing inherently unjust about enrichment" and an unjust-enrichment claim applies only to "enrichments . . . objectively seen as unjust." *Omnibank of Mantee v. United S. Bank*, 607 So. 2d 76, 92 (Miss. 1992). "For a plaintiff to recover under this rule, the party to whom the mistaken payment was made must be left in the same position after refund as he would have been in the absence of the initial payment to him." *Montgomery v. CitiMortgage, Inc.*, 955 F. Supp. 2d 640, 656 (S.D. Miss. 2013).

The Court finds Seven Seas has not stated a plausible unjust-enrichment claim apart from the MUTSA. Although Seven Seas contends that Infinite wrongfully caused Conduent to fail to renew its contract, there is no allegation that Seven Seas performed any work for Conduent for which Infinite was mistakenly paid. Requiring Infinite to pay to Seven Seas the fees it received under its contract with Conduent, for work it performed for Conduent, would leave Infinite uncompensated for that work and not "in the same position [as it] would have been in the

13

absence of" the payment. *Id.* The facts as alleged state claims for tortious interference and unfair competition, but they do not invoke the equitable claim for unjust enrichment.

That said, unjust enrichment is an element of damages under the MUTSA. Specifically, the act states:

> Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.

Miss. Code. Ann. § 75-26-7. Accordingly, the motion to dismiss is denied as to the claim for unjust enrichment related to the MUTSA claim.

F.     Count VI: Negligence[3]

To state a claim for negligence, a plaintiff must allege four familiar elements: duty, breach, causation, and injury. *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017). Infinite says Seven Seas' negligence claim fails for lack of duty, breach, and a causal connection between any breach and Seven Seas' injury.

Starting with duty, "[u]nder Mississippi law, every person who undertakes an action has a duty of reasonable care to protect against causing injury to others." *West v. Drury Co.*, 412 F. App'x 663, 667 (5th Cir. 2011).

Regarding breach, Infinite says its conduct did not breach the standard of care because its "conduct was reasonable in the light of what [it] could anticipate" insofar as "the Complaint lacks factual allegations that Infinite's recruiting is anything more than a legitimate business

---

[3] Count VII of the Complaint alleges "intentional [and] willful" misconduct or, alternatively "gross[] negligen[ce]." Compl. [1] ¶ 56. It does not identify a particular intentional tort beyond those already addressed above.

14

objective." Def.'s Mem. [10] at 13, 14.  And it argues that, in any event, "the Complaint does not make it plausible that Infinite's recruiting efforts caused the competitive injury of which [Seven Seas] complains."  *Id.* at 14.  But the Court has already held that Seven Seas' allegations overcome Infinite's Rule 12(b)(6) challenge on these issues.  The Court likewise finds the negligence claim should proceed to discovery.

IV.     Conclusion

The Court has considered all the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Defendant's Motion to Dismiss [9] is granted as to the general unjust-enrichment claim but otherwise denied.  The parties are directed to contact the chambers of United States Magistrate Judge F. Keith Ball within 10 days of the entry of this Order to set the case for a case-management conference.

**SO ORDERED AND ADJUDGED** this the 30th day of October, 2018.

                                              s/ *Daniel P. Jordan III*
                                              CHIEF UNITED STATES DISTRICT JUDGE